```
          IN THE UNITED STATES DISTRICT COURT FOR
        THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                              *
ROBERT LEE EDWARDS
                              *
    Plaintiff,
v.                            *    CIVIL NO.: WDQ-03-2763

OFFICER ROSE BORISOW, et al.  *

    Defendants.                *

*   *   *   *   *   *   *   *   *   *   *   *   *
```

MEMORANDUM OPINION AND ORDER

Robert Lee Edwards sued Officer Rose Borisow, the Rockville Police Department[1] and former Chief of Police Charles A. Moose[2] alleging the use of excessive force in violation of 42 U.S.C. §1983. Pending is the Defendants' motion for summary judgment. For the following reasons, the Defendants' motion for summary judgment will be granted.

I.   BACKGROUND

On September 26, 2000, Edwards shot a man in Gaithersburg, Maryland.  Def. Mot. Summ. J. Exh. 1 at 24-25.

---

[1] The Court has earlier granted the Rockville Police Department's motion to dismiss.

[2] Chief J. Thomas, current Chief of Police for the Rockville Police Department has been substituted for former Chief Moose. *See Brandon v. Holt*, 469 U.S. 464, 471 (1985).

Immediately after the shooting, Edwards and two friends fled in a red two door car. *Id.* at 27-28; 61-62. Officer Borisow was on patrol when the police radio dispatcher announced the shooting. Def. Mot. Summ. J. Exh. 2, No. 8. Officer Borisow then drove to the scene of the shooting and was told that the perpetrators were African-American males--one wearing a "hoody"[3]--riding in a red Chevrolet Cavalier. *Id.*

After a 40 minute search, Officer Borisow saw a red Cavalier carrying three African-American males. *Id.* Using her spotlight, Officer Borisow saw that one of the occupants was wearing a "hoody". Def. Mot. Summ. J. Exh. 3 at 31-32. As she followed the vehicle, she saw that the occupants were acting nervously and became suspicious. I*d.* at 30. She radioed for backup. *Id.*

When backup arrived, Officer Borisow activated her emergency lights and siren to perform a traffic/felony stop.[4] The Plaintiff's car did not stop. *Id.* at 32-33. Instead, the car slowed then accelerated at least four or five times. *Id.* at 35. Officer Borisow pulled her car in front of the Cavalier.

---

[3]A hooded sweatshirt.

[4]A felony stop occurs when a officer stops her car behind the suspects' car, orders the suspects out of the car one at a time, has them walk to the police one at a time with hands up, and handcuffs them. Def. Mot. Summ. J. Exh. 3 at 29.

2

I*d.* at 35-37.

When the red car stopped, Officer Borisow got out of her car with her gun and flashlight. I*d.* When the suspects jumped out, Officer Borisow ordered them back into the car. *Id.* at 54. Instead, the Plaintiff reached under the front passenger seat and placed an object into his pocket. *Id.* at 58. Thinking--correctly--that the Plaintiff was reaching for a gun,[5] Officer Borisow ran to the Plaintiff shouting, "Get your hands up! Get your hands up!" Def. Mot. Summ. J. Exh. 3 at 54. The Plaintiff ran, and Officer Borisow chased him. Def. Mot. Summ. J. Exh. 2 No. 8.

The events after Borisow commanded Edwards to stop are disputed. Officer Borisow contends that Edwards reached into his pocket for the gun and--fearing for her life--she shot him. Def. Mot. Summ. J. Exh. 3 at 63, 75. The parties' experts have testified that it is likely that Edwards was slightly turning toward Officer Borisow at the time of the shooting. Plain. Opp. Exh. E at 68; Exh. F at 25.

Edwards was transported to the hospital and rushed to surgery to remove the bullet from his back. I*d.* at 49. A day after the shooting, Edwards told police that Officer Borisow

---

[5]The Plaintiff has admitted that he retrieved a gun. Def. Mot. Summ. J. Exh. 1 at 63.

knew he had a gun and that he was shot because he disobeyed the police. Def. Mot. Summ. J. Exh.4A. In his deposition, however, Edwards testified that Officer Borisow could not have seen the gun, because it was hidden in his pocket. Plain. Opp. Exh. A at 47, 75.

Edwards was tried and convicted of attempted voluntary manslaughter, first degree assault, and use of a handgun in commission of a felony. Def. Mot. Summ. J. Exh. 1 at 65.

Edwards alleges that the shooting violated his civil rights. On September 23, 2003, he filed this suit.

## II. LEGAL DISCUSSION

A.   Motion for Summary Judgment

   1. Standard of Review

Summary judgment is appropriate when there is no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus,

"the judge must ask ... whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The court must view the facts and the reasonable inferences therefrom "in the light most favorable to the party opposing the motion," *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must produce evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  The mere existence of a "scintilla" of evidence is not sufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

2.   Excessive Force and the Fourth Amendment

Officer Borisow contends that she is entitled to qualified immunity because the use of her weapon was justified and objectively reasonable.

Government officials are generally entitled to qualified immunity from suit for acts committed in their performance of discretionary functions unless their conduct violates clearly established constitutional rights.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In determining qualified immunity issues, the Court must undertake a two-step analysis. *See Saucier v. Katz*, 121 S.C. 2151, 2155 (2001).  First, the Court must consider whether taken in the light most favorable to

5

the plaintiff, the facts alleged show the officer's conduct violated a constitutional right. *Id.* at 2156. If no constitutional right was violated, the analysis ends and the defendant is entitled to qualified immunity. *Id.* If the Court finds that the officer's conduct violated a constitutional right, then the next step is to ask whether the right was clearly established. If the right was not clearly established, then the officers are immune from suit. *Id.*

Claims that law enforcement officers used excessive force are analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Under the Fourth Amendment, a police officer may use deadly force when he has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). In analyzing whether the officer's use of force was excessive, the Court considers what a reasonable officer in the same circumstances would have done. *Graham*, 490 U.S. at 396. The test of reasonableness is "not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). The Court must, therefore, analyze all the facts and circumstances surrounding the incident, including the severity of the crime at issue and whether the suspect was actively

6

resisting arrest. *Graham*, 490 U.S. at 396.  The Supreme Court cautions that reasonableness determinations are limited to the perspective of a reasonable officer on the scene, not 20/20 hindsight perceptions.  *Id.*

The Plaintiff argues that summary judgment is inappropriate because there exists a genuine dispute regarding whether Officer Borisow saw his gun.  Specifically, the Plaintiff contends that if the officer did not see the gun, her use of force was unreasonable.  The Plaintiff's contention is wrong.  A police officer does not have to have a gun pointed at her or see a gun before firing at a suspect.  *See Cunningham v. Hamilton*, No. 03-1639, 2004 U.S. App. LEXIS 2004, slip. op. at *3 (4th Cir. Jan. 12, 2004); *McLenagan v. Karnes*, 27 F.3d 1002, 1007 (4th Cir. 1994).  The proper inquiry is whether Officer Borisow reasonably and objectively believed that her safety was in danger.  *See Sigman v. Town of Chapel Hill*, 161 F.3d 782, 786-87 (4th Cir. 1998).

The undisputed evidence is that Officer Borisow was informed that Edwards--a suspect in a shooting--should be considered armed and dangerous.  It is also undisputed that Officer Borisow observed Edwards place an object into his pocket. Despite several warnings, Edwards fled. Throughout the pursuit, his hand remained on the gun.  Plain. Opp. Exh. A at

7

47.

Although Edwards testified that his hand was on the gun to keep it from falling out of his pocket, *id.*, Officer Borisow was unaware of his intent. Any reasonable officer in the Defendant's position would fear for her safety when a dangerous suspect's hand remains on an unknown object throughout a pursuit. Borisow's fear that Edwards was going to reach into his pocket to retrieve a gun was reasonable.

Although Officer Borisow may not have been completely certain that Edwards was armed, she was equally uncertain that he was unarmed. *See McLenagan*, 27 F.3d at 1007 (shooting suspect was reasonable because officer was uncertain that suspect was unarmed). The Court is not required to second-guess the split-second judgment of a trained police officer, particularly when inaction could have resulted in her death or serious injury. *Id.* at 1008.

In these circumstances, Officer Borisow reasonably perceived a threat to her safety, and her actions were lawful.

As Officer Borisow is entitled to qualified immunity, the Chief of Police is not liable under §1983. *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 420 (4th Cir. 1996) (absent officer's use of excessive force, liability cannot be imputed to her supervisor).

8

III. CONCLUSION

For the reasons discussed above, the Defendants' motion for summary judgment will be granted.

July 22, 2005                              /s/
Date                           William D. Quarles, Jr.
                               United States District Judge